**The PEOPLE of the State of Colorado, Plaintiff–Appellee;**

**v.**

**Brian P. SCOTT, Defendant–Appellant.**

No. 06CA2009.

Colorado Court of Appeals, Div. V.

Dec. 27, 2007.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Martinez Law, LLC, Esteban A. Martinez, Northglenn, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO *.

Defendant, Brian P. Scott, appeals the trial court's order directing him to reimburse the state for the cost of court-appointed counsel who represented him in connection with his guilty plea to theft. We reverse and remand for further proceedings.

Defendant was charged with theft and unauthorized use of a financial transaction device.

Following initial advisement, defendant submitted an application for court-appointed counsel in which he indicated that he was unemployed and had no monthly income. Based on these representations, the trial court appointed the public defender's office.

Thereafter, the parties entered into an agreement that defendant would plead guilty to the theft charge in exchange for dismissal of the remaining charge and dismissal of a second pending case; he would then be sentenced to community corrections for five years and ordered to pay restitution of $5979.79 (to the victims of his crimes in both cases, and to the sheriff's department for the cost of extradition). The trial court tentatively approved the plea agreement and ordered the probation department to complete a presentence report. Neither the written plea agreement nor the parties' statements to the court summarizing the agreement contained any reference to reimbursement for the cost of court-appointed counsel.

The probation department soon filed a report indicating that defendant was employed as a vacuum cleaner salesman, a position he had obtained one month after he had filed his application for court-appointed counsel. The report stated that defendant had reported to the probation officer that:

his income varied by month but that he averages $6,000 per month. The defendant explained that he recently received a $2,000 bonus for selling more than 40 vacuums in a month. This information has not been confirmed. This officer has attempted to contact the defendant's employer by the phone numbers he provided several times but has been [un]able to contact his supervisor.

Before the court imposed sentence, the prosecutor made the following request:

I don't know whether the [c]ourt has the authority to order that he pay anything for legal representation in this case, but it seems ... to be a misuse of public defender funds and judicial funds to ... pay for ... [c]ourt appointed counsel ... for nothing in this case where he's making the kind of money he's made, and he's had this employment [for approximately seven months] and I don't think the public defender system was set up ... to ... provide free representation for the people making the kind of money [defendant] says he makes.

The court took the prosecution's request under advisement and imposed sentence in accordance with the parties' agreement.

Soon thereafter, the trial court issued an "Order for Time Records," requiring the public defender's office to file a report disclosing the number of hours that attorneys and staff had worked on defendant's case, as well as all associated costs. In response, the deputy public defender who had represented defendant at sentencing filed a report indicating that she had "spent in aggregate 2.5 hours" representing defendant. However, in the report, she also stated that the deputy public defender who had initially represented defendant was no longer with the office, and that the public defender's office's "internal provisions and polices" prohibited any discussion of "former representation with former deputies of this office."

Several months later, the community corrections facility where defendant was housed

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

filed a report with the court indicating that defendant was still employed with the vacuum cleaner sales company, and that his supervisor had confirmed defendant was "earning a salary of $350.00 a week as a sales manager."

The next month, the court issued an "Order for Reimbursement" in which it found that the deputy public defenders had made seven court appearances on defendant's behalf totaling approximately one hour and ten minutes of court time. The court reasoned that because "counsel spend about two hours outside the court for every hour of in-court time, ... about three and one-half hours have been spent by the Office of the Public Defender in representing the [d]efendant." Noting that court-appointed private counsel "are compensated at the rate of about $50 per hour for professional services," the court concluded that "[d]efendant should reimburse the State of Colorado not less than $175 for the services of the Public Defender." However, the court observed that "[t]he amount of time spent on a case is only one method to measure the value of legal services." Relying on Colorado Rules of Professional Conduct 1.5, the court determined that it was permissible to consider factors such as the favorable result obtained by counsel, the customary fee charged by private counsel for similar services, and the experience and ability of the deputy public defenders who had represented defendant. The court stated:

> The [c]ourt is unaware of exactly what fees [are] earned by the private bar for similar matters, but the [c]ourt believes, based upon its experience in reviewing fees quoted for purposes of determining ability to afford counsel, that, considering the charges, the defendant's background, and the nature of the case, that a retainer of $3,000 would not be unreasonable with a maximum fee of $10,000.

Based on its consideration of these factors, as well as the fact that defendant had not denied the unconfirmed statement in the presentence report indicating that he earned approximately $6000 per month, the court ordered defendant to reimburse the state $4500 for the services of the public defender's office.

One month later, defendant filed a "Motion and Order to Proceed In Forma Pauperis and to Appoint Public Defender on Appeal." In an accompanying application for court-appointed counsel, defendant stated that his monthly income was $1400 and that his only valuable asset was a car worth $500.

The court asked defendant to verify his income. In response, defendant filed a paycheck stub with the court indicating that he was paid $350 per week.

The trial court found defendant indigent and appointed alternate defense counsel to represent him in this appeal.

## I.

Defendant argues that the trial court's reimbursement order exceeded the scope of the plea agreement and violated his due process right to specific performance of the plea agreement. We disagree.

■ "[T]he Due Process Clause of the Fourteenth Amendment furnishes the basis for the enforcement of a governmental promise made to an accused during the pendency of a criminal prosecution against him." *People v. Fisher*, 657 P.2d 922, 927 (Colo.1983).

■ The interpretation of a plea agreement is a question of law, which we review de novo. *St. James v. People*, 948 P.2d 1028, 1031 (Colo.1997).

Whether an order directing a convicted defendant to reimburse the state for the cost of court-appointed counsel is a component of the sentence depends on the underlying basis for the order. Our research reveals three possible bases for such an order.

First, the parties to a plea agreement may stipulate that the sentence will include a requirement that the defendant reimburse the government for the cost of court-appointed counsel. *See, e.g., State v. Thorstad*, 261 N.W.2d 899, 903–04 (N.D.1978) (when a defendant agrees to pay restitution for the cost of court-appointed counsel as part of a plea agreement, a sentencing court orders the restitution by virtue of the agreement and not pursuant to the statute governing restitution for attorney fees). Clearly, that did not occur in this case.

Second, where authorized, a court may include as a component of the defendant's sentence a requirement that the defendant reimburse the government for the cost of court-appointed counsel. *See, e.g.,* Chief Justice Directive 04–04(V) (permitting the sentencing court to require payment for the cost of representation as a condition of probation); *cf. Fuller v. Oregon,* 417 U.S. 40, 43, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974) (rejecting an equal protection challenge to a statute directing that a sentence to probation shall include a requirement for reimbursement of the cost of court-appointed counsel where an indigent defendant subsequently gains the ability to repay the expenses of legal representation).

Third, where authorized, a court may enter a separate reimbursement order. In such circumstances, the order is not considered part of the sentence, but rather an independent judgment. *See* § 21–1–106, C.R.S.2007; Chief Justice Directive 04–04(V) (providing that an order to pay cost of representation is a final judgment that may be collected in any lawful manner); *see also United States v. Standiford,* 148 F.3d 864, 870 (7th Cir.1998) (although the obligation to reimburse the government for the cost of court-appointed counsel was imposed in the course of the sentencing process, the order is not part of the sentence and "must be regarded as an independent civil liability imposed" pursuant to statute).

■ Here the record shows that the trial court's order is not a component of defendant's sentence. The trial court ordered defendant to pay reimbursement pursuant to section 21–1–106, which outlines a method of collection that does not depend on, or refer to, conditional sentencing options such as community corrections or probation:

> In any case when a court determines that a defendant is able to repay all or part of the expense of state-supplied or court-appointed counsel or any ancillary expenses incurred in representing such defendant, the court shall assess such fees or costs against such defendant and shall notify the judicial district's collection investigator or the controller, who shall institute proceedings pursuant to section 24–30–202.4,

C.R.S. [the general state debt collection statute], as necessary to recover such fees or costs.

Consistent with the language of this section, the trial court's reimbursement order does not state that defendant's community corrections sentence can be revoked for his willfully failing to reimburse the state for the cost of his court-appointed counsel. Accordingly, we conclude the reimbursement order is not part of defendant's sentence. In light of this determination, we reject defendant's claim that the trial court's order contravenes the plea agreement.

## II.

Defendant next argues that the trial court erred, both in establishing the amount that he owed the state for the cost of his court-appointed counsel, and in determining his ability to pay. According to defendant, the appropriate remedy is for us to make a determination that he is without the means to reimburse the state.

In contrast, the People contend the record supports the trial court's determination that defendant has the ability to reimburse the state for the cost of his court-appointed counsel. However, the People concede the trial court erred in establishing the amount owed. Thus, the People urge us to remand for further proceedings limited to that issue.

We conclude, as set forth below, that the trial court must make new findings concerning the amount of reimbursement that is owed and, depending on the outcome of that determination, defendant's ability to pay all or part of that amount.

### A. The Amount Owed

Chief Justice Directive 04–04(V) provides, in relevant part, as follows:

> If the court determines, at any time before or after the appointment of state-funded counsel, that the person has the ability to pay all or a part of the costs for representation or other expenses/costs, the court shall enter a written order that the person reimburse all or a part of said costs. Such order shall constitute a final

judgment including costs of collection and may be collected by the state in any manner authorized by law. The court shall review the person's indigency status at the time of sentencing or case disposition and notify the defendant or responsible party that attorney fees and expenses and other costs are being assessed in an amount to be determined once all bills have been submitted. The financial review may be accomplished with the use of the judicial district's Collections Investigator. If the defendant is placed on probation, the court may require payment for the costs of representation as one of the conditions of probation.

. . . .

Collection of fees and costs related to court-appointed representation may be referred to the Collections Investigator or a private collector that has an agreement for such collection services with the State Court Administrator's Office.

Costs for representation provided may be assessed against the responsible party(ies) at the fixed hourly rate for state-funded private counsel, at the state-funded counsel contract rate, or at the hourly cost of providing legal representation by the Public Defender or Alternate Defense Counsel for the number of hours reported by counsel to the court. Other costs incurred for the purposes of prosecution of the case may also be assessed, including, for example, costs for transcripts, witness fees and expenses, language interpreter fees, and costs for service of process. In addition, the responsible party(ies) may be required to pay costs of collection. Costs incurred for accommodations required under the Americans with Disabilities Act, such as hearing interpreter fees, may not be assessed.

■ "Chief Justice Directives are an expression of Judicial Branch policy and are to be given full force and effect in matters of court administration." *Hodges v. People,* 158 P.3d 922, 926 (Colo.2007).

■ Here, the trial court set the amount of reimbursement based, in part, on factors other than the amount of time that the deputy public defenders had devoted to the case (for example, the favorable disposition that defendant obtained). This was a violation of Chief Justice Directive 04–04. *See also* C.R.C.P. ch. 23.3, Rule 3 ("[n]o contingent fee agreement shall be made ... in respect to the procuring of an acquittal upon any favorable disposition of a criminal charge"). Therefore, we must remand the case to the trial court for recalculation in accordance with Chief Justice Directive 04–04.

On remand, the trial court shall again direct the public defender's office to submit a complete time summary for *all* the deputy public defenders who represented defendant in connection with this case. While we perceive no reason why the public defender's office cannot communicate with a former deputy public defender for the limited purpose of obtaining information as to the number of hours that he or she worked on defendant's case, if the public defender's office concludes there are valid reasons why it cannot obtain this information, it may petition the trial court for guidance concerning how best to proceed.

### B. Defendant's Ability to Pay

We acknowledge that, at sentencing, defendant did not disavow the statements in the presentence report indicating that he was earning $6000 per month as a vacuum cleaner salesman. However, all the other documentary evidence in the record suggests that defendant's monthly income is now considerably less. Accordingly, on remand, the trial court shall ascertain defendant's present income and take that into account when determining whether defendant is able to reimburse the state for all, or part, of the cost of his court-appointed counsel. See *People v. Villa–Villa,* 983 P.2d 181, 183 (Colo.App. 1999) (recognizing that a trial court should not order reimbursement pursuant to § 21–1–106 unless it makes a finding regarding the defendant's ability to pay).

The order is reversed, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Chief Judge DAVIDSON and Judge RULAND * concur.